UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

CAMILLE POUX and RALPH POUX,

                             Plaintiffs,

      -against-

THE COUNTY OF SUFFOLK, DET. INV. JOHN WHITE,
Shield No. 265, THOMAS J. SPOTA, individually and as
District Attorney of the County of Suffolk, LINDA A.
RUGGIERI, individually and as Assistant District Attorney
of the County of Suffolk, MALLORY O. SULLIVAN,
individually and as Assistant District Attorney of the County
of Suffolk, GRAZIA DIVINCENZO, individually and as
Assistant District Attorney of the County of Suffolk, THE
COUNTY OF NASSAU, DET. RONALD SCHEPIS, Shield
No. 883, KATHLEEN RICE, individually and as District
Attorney of the County of Nassau, MINDY PLOTKIN,
individually and as Assistant District Attorney of the County
of Nassau, MELISSA MORRONE, individually and as
Assistant District Attorney of the County of Nassau,
CITIGROUP, INC., CITIBANK, N.A., CITIGROUP
INVESTIGATIVE SERVICES and DARREN V. FINN,

                             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**AMENDED
VERIFIED
COMPLAINT**

**JURY DEMAND**

Case Number: **09-3081**

      Plaintiffs, CAMILLE POUX and RALPH POUX, by their attorneys, RUBERT &

GROSS, P.C., complaining of defendants, allege, upon information and belief, as follows:

## INTRODUCTION

    1.    This is an action to redress the deprivation under color of statute, ordinance,

regulation, custom or usage of a right, privilege and immunity secured to plaintiffs by the First,

Fourth, Fifth, Thirteenth and Fourteenth Amendments to the Constitution of the United States,

1

brought pursuant to 42 U.S.C. §§1983, 1985, 1986 and 1988, and arising under the law and statutes of the State of New York.

2.       Between December 9, 2004 and January 21, 2005, a series of payroll checks was cashed at various bank branches owned, operated and controlled by defendant, CITIBANK, a subsidiary of defendant, CITIGROUP, and located in Suffolk and Nassau Counties, State of New York.

3.       Said checks were fraudulent in nature, produced and negotiated by persons unknown.

4.       It was the defendants' express opinion and belief that a single person negotiated all of the aforementioned fraudulent checks at the various CITIBANK branches in Nassau and Suffolk Counties.

5.       The aforementioned checks were "scanned" copies of proper payroll checks that had their original dollar amounts raised from approximately $500.00 to approximately $1,000.00.

6.       The aforementioned checks were routinely cashed by defendant, CITIBANK, although only containing "facsimile authorizing signature[s]."

7.       The aforementioned transactions were recorded by defendant, CITIGROUP, defendant, CITIBANK, and/or defendant, CIS' surveillance systems.

8.       Defendants, CITIGROUP, CITIBANK and/or CIS' surveillance systems recorded video image(s) of the perpetrator of the subject fraudulent transactions.

9.       CITIGROUP, CITIBANK and/or CIS' surveillance systems depict image(s) of the perpetrator of the subject fraudulent transactions as being a very tall, slender, and very light skinned complexioned Caucasian or Hispanic women.

2

10.     Plaintiff is a very short, full figured and deeply dark skinned complexioned African-American woman.

11.     Plaintiff is obviously *not* depicted in any of the subject video surveillance tapes.

12.     Suffolk County Transportation Corp. (hereinafter referred to as "SCT") is a customer and depositor of defendant, CITIBANK.

13.     SCT had an agreement with defendant, CITIBANK, whereby defendant, CITIBANK, "would only cash checks for SCT if the employee had their account at CITIBANK."

14.     The aforementioned checks that were fraudulently cashed involved employees who did not have accounts at defendant, CITIBANK.

15.     Defendant, CITIBANK, cashed the aforementioned checks, despite the fact that doing so was in violation of its agreement with SCT.

16.     On or about December 21, 2004, SCT discovered that approximately $60,000.00 had been removed from its account due to the aforementioned checks having been cashed by defendant, CITIBANK.

17.     CITIBANK blocked SCT's account and established a new account for SCT, but despite these efforts, defendant, CITIBANK, continued to credit fraudulent payroll checks against the new account.

18.     CITIBANK subsequently determined that in addition to SCT account other accounts were also subjected to fraudulent transactions.

19.     On or about mid-January 2005, defendants, CITIGROUP and CITIBANK, appointed defendant, FINN, to "investigate" the cashing of the aforementioned checks.

3

20.     Defendant, FINN, was appointed by defendants, CITIGROUP and CITIBANK, not to resolve the breakdown in security that lead to the cashing of the payroll checks, but to give defendant, CITIBANK's customers the appearance that efforts were being made to resolve defendant, CITIBANK's security problems that resulted in the cashing of said checks.

21.     Defendants, NASSAU and SUFFOLK, have instituted polices whereby bank investigators are encouraged, suffered, and allowed to perform police functions, such as fraud investigations, regarding accounts held at said banks.

22.     Defendants, NASSAU and SUFFOLK, as a matter of policy, caused, allowed and suffered defendants, CITIGROUP, CITIBANK and/or CIS, upon matters relating to the investigation of fraud, forgery and similar criminal activities carried out upon bank accounts held by defendant, CITIBANK, to become intertwined with the Nassau and Suffolk County Police Departments.

23.     FINN, acting recklessly, negligently, maliciously and with completely disregard for the truth caused and directed defendants, NASSAU and SUFFOLK, to arrest plaintiff for the passing of the aforementioned fraudulent checks pertaining to the several accounts held at Citibank.

24.     Defendant, FINN, worked so closely with defendants, NASSAU and SUFFOLK, their agents, servants, and/or employees, as to be functionally subsumed within said defendants and/or acting as an adjunct and/or agent thereof and thereto.

25.     Defendant, FINN, acted against plaintiff due to her race.

26.     Defendant, FINN acted against plaintiff in order to cover up defendants, CITIGROUP, CITIBANK and/or CIS' negligent security practices.

4

27. Defendants, CITIGROUP, CITIBANK and/or CIS' actions against plaintiff are part of a policy and procedure maintained, encouraged and acquiesced to by defendants, CITIBANK and/or CIS, whereby defendants, CITIGROUP, CITIBANK and/or CIS, their agents servants, and/or employees, and especially including but not limited to defendant, FINN, discriminate against members of the minority communities by subjecting said persons disproportionately to accusations of criminal activity without regard to the veracity of said accusations, and solely due to the race and/or ethnic orientation of said persons.

28. Defendant, FINN, either knew or should have known, that defendants, CITIGROUP, CITIBANK and/or CIS' security films established that plaintiff had not negotiated the aforementioned checks.

29. Defendants, CITIGROUP, CITIBANK and/or CIS, through their agents, servants and/or employees, especially including but not limited to defendant, FINN, acted negligently, recklessly, wantonly, and intentionally in causing the arrest of plaintiff, even though defendants, CITIGROUP, CITIBANK and/or CIS, and their agents, servants and/or employees, especially including but not limited to defendant, FINN, either knew, or should have known, that the subject security films established that plaintiff had not negotiated the aforementioned checks.

30. Defendants, CITIGROUP, CITIBANK and/or CIS, their agents, servants and/or employees, especially including but not limited to defendant, FINN, negligently, recklessly, wantonly, and intentionally disregarded the content of the subject security films because of their policy and procedure of discriminating against persons of minority communities.

5

## JURISDICTION

31. Jurisdiction is founded upon 28 U.S.C. §§1331, 1343 and 1367.

32. Venue is properly placed in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §1391(b).

33. The matter in controversy exceeds, exclusive of interest and costs, the sum or value of Seventy-Five Thousand ($75,000.00) Dollars.

## PARTIES

34. The plaintiff, CAMILLE POUX, at all times herein mentioned was and still is a citizen of the United States and a resident of the County of Queens and the State of New York.

35. The plaintiff, CAMILLE POUX, at all times herein mentioned was and still is of African-American ancestry.

36. The plaintiff, RALPH POUX, at all times herein mentioned was and still is a citizen of the United States and a resident of the County of Queens and the State of New York.

37. The plaintiff, RALPH POUX, at all times herein mentioned was and still is the lawful husband of plaintiff, CAMILLE POUX.

38. At all times herein mentioned, defendant, COUNTY OF NASSAU (hereinafter referred to as "NASSAU"), was and still is a municipal corporation, created, organized and existing under and by virtue of the laws of the State of New York.

39. Defendant, NASSAU, its agents, servants and/or employees operated, maintained and controlled the Nassau County Police Department.

6

40. At all times mentioned herein, defendant, DET. RONALD SCHEPIS, Shield No. 883 (hereinafter referred to as "SCHEPIS"), was employed by defendant, NASSAU, as a police officer.

41. At all times mentioned herein, defendant, SCHEPIS, was acting within the scope of his employment as a police officer with the Nassau County Police Department.

42. At all times mentioned herein, defendant, SCHEPIS, was acting under color of law and authority as a police officer with the Nassau County Police Department.

43. At all times mentioned herein, defendant, NASSAU, its agents, servants and/or employees operated, maintained, managed, and controlled the Nassau County District Attorney's Office.

44. At all times mentioned herein, defendant, KATHLEEN M. RICE (hereinafter referred to as "RICE"), was the District Attorney for Nassau County.

45. At all times mentioned herein, defendant, RICE, was acting within the scope of her employment as the District Attorney for Nassau County.

46. At all times mentioned herein, defendant, RICE, as the District Attorney for Nassau County, was acting under color of law and authority as prosecutor.

47. At all times mentioned herein, defendant, RICE, as District Attorney for Nassau County, had Assistant District Attorneys who were assigned to her.

48. At all times mentioned herein, defendant, RICE, as District Attorney for Nassau County, had supervisory duties over these Assistant District Attorneys employed by the Nassau County District Attorney's Office.

7

49.    At all times mentioned herein, defendant, MINDY PLOTKIN (hereinafter referred to as "PLOTKIN"), was an Assistant District Attorney employed by the Nassau County District Attorney's Office.

50.    At all times mentioned herein, defendant, PLOTKIN, was acting within the scope of her employment as an Assistant District Attorney for Nassau County.

51.    At all times mentioned herein, defendant, PLOTKIN, as an Assistant District Attorney for Nassau County, was acting under color of law and authority as prosecutor.

52.    At all times mentioned herein, defendant, MELISSA MORRONE (hereinafter referred to as "MORRONE"), was an Assistant District Attorney employed by the Nassau County District Attorney's Office.

53.    At all times mentioned herein, defendant, MORRONE, was acting within the scope of her employment as an Assistant District Attorney for Nassau County.

54.    At all times mentioned herein, defendant, MORRONE, as an Assistant District Attorney for Nassau County, was acting under color of law and authority as prosecutor.

55.    At all times herein mentioned, defendant, COUNTY OF SUFFOLK (hereinafter referred to as "SUFFOLK"), was and still is a municipal corporation, created, organized and existing under and by virtue of the laws of the State of New York.

56.    At all times mentioned herein, defendant, SUFFOLK, its agents, servants and/or employees operated, maintained and controlled the Suffolk County Police Department.

57.    At all times mentioned herein, defendant, DET. INV. JOHN WHITE (hereinafter referred to as "WHITE"), Shield No. 265, was employed by defendant, SUFFOLK, as a police officer.

8

58. At all times mentioned herein, defendant, WHITE, was acting within the scope of his employment as a police officer with the Suffolk County Police Department.

59. At all times mentioned herein, defendant, WHITE, was acting under color of law and authority as a police officer with the Suffolk County Police Department.

60. At all times mentioned herein, defendant, SUFFOLK, its agents, servants and/or employees operated, maintained, managed, and controlled the Suffolk County District Attorney's Office.

61. At all times mentioned herein, defendant, THOMAS J. SPOTA (hereinafter referred to as "SPOTA"), was the District Attorney for Suffolk County.

62. At all times mentioned herein, defendant, SPOTA, was acting within the scope of his employment as the District Attorney for Suffolk County.

63. At all times mentioned herein, defendant, SPOTA, as District Attorney for Suffolk County, was acting under color of law and authority as prosecutor.

64. At all times mentioned herein, defendant, SPOTA, as District Attorney for Suffolk County, had Assistant District Attorneys who were assigned to him.

65. At all times mentioned herein, defendant, SPOTA, as District Attorney for Suffolk County, had supervisory duties over these Assistant District Attorneys employed by the Suffolk County District Attorney's Office.

66. At all times mentioned herein, defendant, LINDA RUGGIERI (hereinafter referred to as "RUGGIERI"), was an Assistant District Attorney employed by the Suffolk County District Attorney's Office.

67. At all times mentioned herein, defendant, RUGGIERI, was acting within the scope of her employment as an Assistant District Attorney for Suffolk County.

9

68. At all times mentioned herein, defendant, RUGGIERI, as an Assistant District Attorney for Suffolk County, was acting under color of law and authority as prosecutor.

69. At all times mentioned herein, defendant, MALLORY O. SULLIVAN (hereinafter referred to as "SULLIVAN"), was an Assistant District Attorney employed by the Suffolk County District Attorney's Office.

70. At all times mentioned herein, defendant, SULLIVAN, was acting within the scope of his employment as an Assistant District Attorney for Suffolk County.

71. At all times mentioned herein, defendant, SULLIVAN, as an Assistant District Attorney for Suffolk County, was acting under color of law and authority as prosecutor.

72. At all times mentioned herein, defendant, GRAZIA DIVINCENZO (hereinafter referred to as "DIVINCENZO"), was an Assistant District Attorney employed by the Suffolk County District Attorney's Office.

73. At all times mentioned herein, defendant, DIVINCENZO, was acting within the scope of his employment as an Assistant District Attorney for Suffolk County.

74. At all times mentioned herein, defendant, DIVINCENZO, as an Assistant District Attorney for Suffolk County, was acting under color of law and authority as prosecutor.

75. At all times mentioned herein, defendant, WHITE, was a police officer employed by the Suffolk County District Attorney's Office.

76. At all times mentioned herein, defendant, WHITE, was acting within the scope of his employment as a detective investigator with the Suffolk County District Attorney's Office.

77. At all times mentioned herein, defendant, WHITE, was acting under color of law and authority as a detective investigator with the Suffolk County District Attorney's Office.

10

78.     At all times hereinafter mentioned, defendant, CITIGROUP, INC. (hereinafter referred to as "CITIGROUP"), was and still is a domestic corporation organized under the laws of the State of New York.

79.     At all times hereinafter mentioned, defendant, CITIGROUP, was and still is a foreign corporation duly authorized to transact business within the State of New York.

80.     At all times hereinafter mentioned, defendant, CITIGROUP, transacted business within the State of New York, receiving a benefit from said business.

81.     At all times hereinafter mentioned, defendant, CITIGROUP, was a corporation licensed to do business in the State of New York.

82.     At all times hereinafter mentioned, defendant, CITIGROUP, was doing business in the State of New York.

83.     At all times hereinafter mentioned defendant, CITIGROUP, was a foreign corporation licensed to do business in the State of New York.

84.     At all times hereinafter mentioned defendant, CITIGROUP, was a foreign corporation doing business in the State of New York.

85.     At all times hereinafter mentioned, defendant, CITIGROUP, was a limited liability corporation licensed to do business in the State of New York.

86.     At all times hereinafter mentioned, defendant, CITIGROUP, was a limited liability corporation doing business in the State of New York.

87.     At all times hereinafter mentioned, defendant, CITIGROUP, transacted business in the State of New York.

88.     At all times hereinafter mentioned, defendant, CITIGROUP, derived substantial revenue from goods used or consumed or services rendered in the State of New York.

89.     At all times hereinafter mentioned, defendant, CITIGROUP, expected or should reasonably have expected its acts to have consequences in the State of New York.

90.     At all times hereinafter mentioned, defendant, CITIGROUP, derived substantial revenue from interstate or international commerce.

91.     At all times hereinafter mentioned, defendant, CITIBANK, N.A. (hereinafter referred to as "CITIBANK"), was and still is a domestic corporation organized under the laws of the State of New York.

92.     At all times hereinafter mentioned, defendant, CITIBANK, was and still is a foreign corporation duly authorized to transact business within the State of New York.

93.     At all times hereinafter mentioned, Defendant, CITIBANK, transacted business within the State of New York, receiving a benefit from said business.

94.     At all times hereinafter mentioned, defendant, CITIBANK, was a corporation licensed to do business in the State of New York.

95.     At all times hereinafter mentioned, defendant, CITIBANK, was doing business in the State of New York.

96.     At all times hereinafter mentioned defendant, CITIBANK, was a foreign corporation licensed to do business in the State of New York.

97.     At all times hereinafter mentioned defendant, CITIBANK, was a foreign corporation doing business in the State of New York.

98.     At all times hereinafter mentioned, defendant, CITIBANK, was a limited liability corporation licensed to do business in the State of New York.

99.     At all times hereinafter mentioned, defendant, CITIBANK, was a limited liability corporation doing business in the State of New York.

100. At all times hereinafter mentioned, defendant, CITIBANK, transacted business in the State of New York.

101. At all times hereinafter mentioned, defendant, CITIBANK, derived substantial revenue from goods used or consumed or services rendered in the State of New York.

102. At all times hereinafter mentioned, defendant, CITIBANK, expected or should reasonably have expected its acts to have consequences in the State of New York.

103. At all times hereinafter mentioned, defendant, CITIBANK, derived substantial revenue from interstate or international commerce.

104. At all times hereinafter mentioned, defendant, CITIBANK, is a subsidiary, agent, and/or corporate division of defendant, CITIGROUP.

105. At all times hereinafter mentioned, defendant, CITIGROUP, owns, operates and controls defendant, CITIBANK.

106. At all times hereinafter mentioned, defendants, CITIGROUP and CITIBANK, are alter-egos of each other.

107. Defendant, CITIGROUP INVESTIGATIVE SERVICES (hereinafter the "CIS"), was and still is a domestic corporation organized under the laws of the State of New York.

108. At all times hereinafter mentioned, defendant, CIS, was and still is a foreign corporation duly authorized to transact business within the State of New York.

109. At all times hereinafter mentioned, defendant, CIS, transacted business within the State of New York, receiving a benefit from said business.

110. At all times hereinafter mentioned, defendant, CIS, was a corporation licensed to do business in the State of New York.

13

111.   At all times hereinafter mentioned, defendant, CIS, was doing business in the State of New York.

112.   At all times hereinafter mentioned, defendant, CIS, was a foreign corporation licensed to do business in the State of New York.

113.   At all times hereinafter mentioned, defendant, CIS, was a foreign corporation doing business in the State of New York.

114.   At all times hereinafter mentioned, defendant, CIS, was a limited liability corporation licensed to do business in the State of New York.

115.   At all times hereinafter mentioned, defendant, CIS, was a limited liability corporation doing business in the State of New York.

116.   At all times hereinafter mentioned, defendant, CIS, transacted business within the State of New York.

117.   At all times hereinafter mentioned, defendant, CIS, derived substantial revenue from goods used or consumed or services rendered in the State of New York.

118.   At all times hereinafter mentioned, defendant, CIS, expected or should reasonably have expected its acts to have consequences in the State of New York.

119.   At all times hereinafter mentioned, defendant, CIS, derived substantial revenue from interstate or international commerce.

120.   At all times hereinafter mentioned, defendant, CIS, is a subsidiary, agent, and/or corporate division of defendants, CITIGROUP and CITIBANK.

121.   At all times hereinafter mentioned, defendants, CITIGROUP and CITIBANK, owns, operates and controls defendant, CIS.

14

122. At all times hereinafter mentioned, defendants, CITIGROUP, CITIBANK and CIS, are alter-egos of each other.

123. At all times mentioned herein, defendant, DARREN V. FINN (hereinafter referred to as "FINN"), was an agent, servant and/or employee of defendant, CIS.

124. At all times mentioned herein, defendant, FINN, was acting within the scope of his employment as a Senior Investigator with defendant, CIS.

125. At all times mentioned herein, defendant, CIS, derived a substantial benefit from the work performed by defendant, FINN.

126. That at all times mentioned herein, defendant, FINN, was an agent, servant and/or employee of defendants, CITIGROUP and CITIBANK.

127. At all times mentioned herein, defendant, FINN, acted within the scope of his employment with defendants, CITIGROUP and CITIBANK, and/or at the direction of defendants, CITIGROUP and CITIBANK.

128. At all times mentioned herein, defendants, CITIGROUP and CITIBANK, derived a substantial benefit from the work performed by defendant, FINN.

129. At all times mentioned herein, as matter of policy, defendant, NASSAU, caused, allowed and suffered defendants, CITIGROUP CITIBANK and/or CIS, to assume police functions and responsibilities relating to the investigation of fraud, forgery and similar criminal activities carried out upon bank accounts held by defendants, CITIGROUP, CITIBANK and/or CIS.

130. At all times mentioned herein, as a matter of policy, defendant NASSAU, caused, allowed and suffered defendants, CITIGROUP, CITIBANK and/or CIS, upon matters relating to the investigation of fraud, forgery and similar criminal activities carried out upon bank accounts

15

held by defendants, CITIBANK and/or CIS, to work so closely with as to become intertwined with the Nassau County Police Department.

131. At all times mentioned herein, as matter of policy, defendant, SUFFOLK, caused, allowed and suffered defendants, CITIGROUP, CITIBANK and/or CIS, to assume police functions and responsibilities relating to the investigation of fraud, forgery and similar criminal activities carried out upon bank accounts held by defendants, CITIGROUP, CITIBANK and/or CIS.

132. At all times mentioned herein, as a matter of policy, defendant, SUFFOLK, caused, allowed and suffered defendants, CITIGROUP, CITIBANK and/or CIS, upon matters relating to the investigation of fraud, forgery and similar criminal activities carried out upon bank accounts held by defendants, CITIGROUP, CITIBANK and/or CIS, to work so closely with as to become intertwined with the Suffolk County Police Department and/or the Suffolk County District Attorney's Office.

## PENDANT STATE CLAIMS, CONDITIONS PRECEDENT

133. That plaintiffs have served a Notice of Claim upon defendant, Nassau on December 29, 2006 in the in the mode and manner prescribed by New York State law.

134. That more than thirty (30) days have elapsed since the service of such Notice of Claim on defendant, Nassau and plaintiffs' claims have not been adjusted or paid.

135. That plaintiffs have served a Notice of Claim upon defendant, Suffolk on July 28, 2008 in the in the mode and manner prescribed by New York State law.

136. That more than thirty (30) days have elapsed since the service of such Notice of Claim on defendant, Suffolk and plaintiffs' claims have not been adjusted or paid.

16

137.    That plaintiffs have fully complied with defendants' demand for examination or
that said demand has been otherwise waived.

## FACTUAL AND GENERAL ALLEGATIONS

138.    Plaintiffs repeat and reiterate each and every allegation contained in paragraphs
numbered "1" through "121" above with the same force and effect as if fully set forth herein.

## FIRST CAUSE OF ACTION
### (42 U.S.C. §1983 - False Arrest & Imprisonment - Suffolk County)

139.    Plaintiffs repeat and reiterate each and every allegation contained in paragraphs
numbered "1" through "122" above with the same force and effect as if fully set forth herein.

140.    On or about June 1, 2005, at approximately 9:45 a.m. while lawfully at or near
531 East 22nd Street in the County of Kings, City and State of New York, plaintiff, CAMILLE
POUX, was unlawfully detained, arrested and imprisoned by agents, servants and/or employees
of defendant SUFFOLK.

141.    On or about June 1, 2005, at approximately 9:45 a.m. while lawfully at or near
531 East 22nd Street in the County of Kings, City and State of New York, plaintiff was
unlawfully detained, arrested and imprisoned by defendant, WHITE, who at that time was
Detective Investigator acting within the scope of his employment.

142.    The above-mentioned arrest was at the specific direction of the Suffolk County
District Attorney's Office pursuant to an investigation conducted by the Suffolk County District
Attorney's Office.

143.    On or about June 1, 2005, plaintiff was unlawfully detained or caused to be
detained by defendant, SPOTA.

144.    On or about June 1, 2005, plaintiff was unlawfully detained or caused to be detained by defendant, RUGGIERI.

145.    On or about June 1, 2005, plaintiff was unlawfully detained or caused to be detained, arrested and imprisoned by defendant, SULLIVAN.

146.    On or about June 1, 2005, plaintiff was unlawfully detained or caused to be detained, arrested and imprisoned by defendant, DIVINCENZO.

147.    That the aforesaid arrest and imprisonment was malicious, unlawful and not based upon a warrant, probable cause and/or any other justification.

148.    That defendant, SUFFOLK, through its agents, servants and/or employees, acted in bad faith and without probable cause in committing the aforesaid false arrest and imprisonment of plaintiff.

149.    That defendant, WHITE, acted in bad faith and without probable cause in committing the aforesaid false arrest and imprisonment of plaintiff.

150.    That defendant, SPOTA, through his agents, servants and/or employees, acted in bad faith and without probable cause in committing the aforesaid false arrest and imprisonment of plaintiff.

151.    That defendant, RUGGIERI, acted in bad faith and without probable cause in committing the aforesaid false arrest and imprisonment of plaintiff.

152.    That defendants, SULLIVAN, acted in bad faith and without probable cause in committing the aforesaid false arrest and imprisonment of plaintiff.

153.    That defendants, DIVINCEZO, acted in bad faith and without probable cause in committing the aforesaid false arrest and imprisonment of plaintiff.

18

154. At the time of plaintiff's unlawful arrest and imprisonment, plaintiff had not committed or attempted to commit any illegal act.

155. At the time of plaintiff's unlawful arrest and imprisonment, plaintiff had not committed or attempted to commit any crime.

156. At the time of plaintiff's unlawful arrest and imprisonment, defendant, SUFFOLK, through its agents, servants and/or employees, knew or should have known, through the exercise of proper procedure and reasonable investigation, that the aforementioned arrest and imprisonment was false and without probable cause.

157. At the time of plaintiff's unlawful arrest and imprisonment, defendant, WHITE, knew or should have known, through the exercise of proper procedure and reasonable investigation, that the aforementioned arrest and imprisonment was false and without probable cause.

158. At the time of plaintiff's unlawful arrest and imprisonment, defendant, SPOTA, through his agents, servants and/or employees, knew or should have known, through the exercise of proper procedure and reasonable investigation, that the aforementioned arrest and imprisonment was false and without probable cause.

159. At the time of plaintiff's unlawful arrest and imprisonment, defendant, RUGGIERI, knew or should have known, through the exercise of proper procedure and reasonable investigation, that the aforementioned arrest and imprisonment was false and without probable cause.

160. At the time of plaintiff's unlawful arrest and imprisonment, defendant, SULLIVAN, knew or should have known, through the exercise of proper procedure and

reasonable investigation, that the aforementioned arrest and imprisonment was false and without probable cause.

161. At the time of plaintiff's unlawful arrest and imprisonment, defendant, DIVINCENZO, knew or should have known, through the exercise of proper procedure and reasonable investigation, that the aforementioned arrest and imprisonment was false and without probable cause.

162. That the aforesaid arrest and imprisonment was made by defendants with knowledge of and/or negligent and/or reckless disregard of the material falseness of the criminal complaint(s).

163. That the charges in Suffolk County against plaintiff were dismissed by the Suffolk County District Attorney's Office on July 14, 2008.

164. That the aforesaid false arrest and imprisonment caused plaintiffs to suffer personal injuries, violation of civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses, and damage to their reputation and standing within their community.

165. That plaintiff's arrest was motivated by racial factors.

166. The actions of Defendant, SUFFOLK, its agents, servants and/or employees heretofore described constitute unlawful detention, arrest and imprisonment and were designed to and did cause specific and serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

167. The actions of Defendant, WHITE, heretofore described constitute unlawful detention, arrest and imprisonment and were designed to and did cause specific and serious

20

bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

168. The actions of Defendant, SPOTA, his agents, servants and employees heretofore described constitute unlawful detention, arrest and imprisonment and were designed to and did cause specific and serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

169. The actions of Defendant, RUGGIERI, heretofore described constitute unlawful detention, arrest and imprisonment and were designed to and did cause specific and serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

170. The actions of Defendant, SULLIVAN, heretofore described constitute unlawful detention, arrest and imprisonment and were designed to and did cause specific and serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

171. The actions of Defendant, DIVICENZO, heretofore described constitute unlawful detention, arrest and imprisonment and were designed to and did cause specific and serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

21

172.    By reason of the foregoing, plaintiffs demand judgment against defendants in a sum of money which exceeds the jurisdictional limits of all courts of lesser jurisdiction.

## SECOND CAUSE OF ACTION
### (42 U.S.C. §1983 - False Arrest & Imprisonment - Nassau County)

173.    Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "172" above with the same force and effect as if fully set forth herein.

174.    On or about July 6, 2005, at approximately 4:00 p.m. while lawfully at or near 2116 Cortelyou Road in the County of Kings, City and State of New York, plaintiff was unlawfully detained, arrested and imprisoned by agents, servants and/or employees of defendant NASSAU.

175.    On or about July 6, 2005, at approximately 4:00 p.m. while lawfully at or near 2116 Cortelyou Road in the County of Kings, City and State of New York, plaintiff was unlawfully detained, arrested and imprisoned by defendant, SCHEPIS, who at that time was a police detective acting within the scope of his employment with the Nassau County Police Department.

176.    On or about July 6, 2005, plaintiff was unlawfully detained, arrested and imprisoned by agents, servants and/or employees of defendant, RICE.

177.    On or about July 6, 2005, plaintiff was unlawfully detained or caused to be detained, arrested and imprisoned by defendant, PLOTKIN.

178.    On or about July 6, 2005, plaintiff was unlawfully detained or caused to be detained, arrested and imprisoned by defendant, MORRONE.

22

179. That the aforesaid arrest and imprisonment was malicious, unlawful and not based upon a warrant, probable cause and/or any other justification, and was therefore false arrest and imprisonment.

180. That defendant, NASSAU, through its agents, servants and/or employees, acted in bad faith and without probable cause in committing the aforesaid false arrest and imprisonment of plaintiff.

181. That defendant, SCHEPIS, acted in bad faith and without probable cause in committing the aforesaid false arrest and imprisonment of plaintiff.

182. That defendant, RICE, through her agents, servants and/or employees, acted in bad faith and without probable cause in committing the aforesaid false arrests and imprisonments of plaintiff.

183. That defendant, PLOTKIN, acted in bad faith and without probable cause in committing the aforesaid false arrest and imprisonment of plaintiff.

184. That defendant, MORRONE, acted in bad faith and without probable cause in committing the aforesaid false arrest and imprisonment of plaintiff.

185. At the time of the unlawful arrest and imprisonment, plaintiff had not committed or attempted to commit any illegal act.

186. At the time of the unlawful arrests and imprisonments, plaintiff had not committed or attempted to commit any crime.

187. At the time of plaintiff's unlawful arrest and imprisonment, defendant, NASSAU, through its agents, servants and/or employees, knew or should have known, through the exercise of proper procedure and reasonable investigation, that the aforementioned arrest and imprisonment was false and without probable cause.

188.    At the time of plaintiff's unlawful arrest and imprisonment, defendant, SCHEPIS,

knew or should have known, through the exercise of proper procedure and reasonable

investigation, that the aforementioned arrest and imprisonment was false and without probable

cause.

189.    At the time of plaintiff's unlawful arrest and imprisonment, defendant, RICE,

through her agents, servants and/or employees, knew or should have known, through the exercise

of proper procedure and reasonable investigation, that the aforementioned arrest and

imprisonment was false and without probable cause.

190.    At the time of plaintiff's unlawful arrest and imprisonment, defendant, PLOTKIN,

knew or should have known, through the exercise of proper procedure and reasonable

investigation, that the aforementioned arrest and imprisonment was false and without probable

cause.

191.    At the time of plaintiff's unlawful arrest and imprisonment, defendant,

MORRONE, knew or should have known, through the exercise of proper procedure and

reasonable investigation, that the aforementioned arrest and imprisonment was false and without

probable cause.

192.    That aforesaid arrest and imprisonment was made by defendants with knowledge

of and/or negligent and/or reckless disregard of the material falseness of the criminal

complaint(s).

193.    That plaintiff was acquitted in Nassau County of the charges leveled against her

by defendants, NASSAU, SCHEPIS, RICE, PLOTKIN and MORRONE, on October 20, 2006.

194.    That plaintiff's arrest was motivated by racial factors.

24

195. The actions of Defendant, SUFFOLK, its agents, servants and/or employees heretofore described constitute unlawful detention, arrest and imprisonment and were designed to and did cause specific and serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

196. The actions of Defendant, SCHEPIS, heretofore described constitute unlawful detention, arrest and imprisonment and were designed to and did cause specific and serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

197. The actions of Defendant, RICE, her agents, servants and employees heretofore described constitute unlawful detention, arrest and imprisonment and were designed to and did cause specific and serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

198. The actions of Defendant, PLOTKIN, heretofore described constitute unlawful detention, arrest and imprisonment and were designed to and did cause specific and serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

199. The actions of Defendant, MORRONE heretofore described constitute unlawful detention, arrest and imprisonment and were designed to and did cause specific and serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed

25

under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

200.     That the aforesaid false arrest and imprisonment caused plaintiffs to suffer personal injuries, violation of civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses, and damage to their reputation and standing within their community.

201.     By reason of the foregoing, plaintiffs demand judgment against defendants in a sum of money which exceeds the jurisdictional limits of all courts of lesser jurisdiction.

## THIRD CAUSE OF ACTION
### (42 U.S.C. §1983 – Assault and Battery - Suffolk County)

202.     Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "201" above with the same force and effect as if fully set forth herein.

203.     On or about June 1, 2005, at approximately 9:45 a.m. while lawfully at or near 531 East 22nd Street in the County of Kings, City and State of New York, plaintiff was assaulted and battered without provocation or justification by police officers employed by defendant SUFFOLK.

204.     On or about June 1, 2005, at approximately 9:45 a.m. while lawfully at or near 531 East 22nd Street in the County of Kings, City and State of New York, plaintiff was assaulted and battered without provocation or justification by defendant, WHITE.

205.     The actions of Defendant, WHITE, heretofore described constitute unlawful assault and battery and were designed to and did cause specific and serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

206.     That as a result of the above-mentioned unprovoked assault and battery, plaintiff was injured, became sick, sore, lame and disabled and was caused to suffer and still suffers severe and permanent injuries and, upon information and belief, will continue to suffer pain and discomfort, and was caused to obtain medical care and attention in an attempt to cure himself of said injuries.

207.     By reason of the foregoing, plaintiffs demand judgment against defendants in a sum of money which exceeds the jurisdictional limits of all courts of lesser jurisdiction.

## FOURTH CAUSE OF ACTION
### (42 U.S.C. §1983 – Assault and Battery - Nassau County)

208.     Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "207" above with the same force and effect as if fully set forth herein.

209.     On or about July 6, 2005, at approximately 4:00 p.m. while lawfully at or near 2116 Cortelyou Road in the County of Kings, City and State of New York, plaintiff was assaulted and battered without provocation or justification by police officers employed by defendant NASSAU.

210.     On or about July 6, 2005, at approximately 4:00 p.m. while lawfully at or near 2116 Cortelyou Road in the County of Kings, City and State of New York, plaintiff was assaulted and battered without provocation or justification by defendant, SCHEPIS.

211.     The actions of Defendant, SCHEPIS heretofore described constitute unlawful assault and battery and were designed to and did cause specific and serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

27

212. That as a result of the above-mentioned unprovoked assault and battery, plaintiff was injured, became sick, sore, lame and disabled and was caused to suffer and still suffers severe and permanent injuries and, upon information and belief, will continue to suffer pain and discomfort, and was caused to obtain medical care and attention in an attempt to cure himself of said injuries.

212. By reason of the foregoing, plaintiffs demand judgment against defendants in a sum of money which exceeds the jurisdictional limits of all courts of lesser jurisdiction.

## FIFTH CAUSE OF ACTION
## (42 U.S.C. §1983 - Malicious Prosecution - Suffolk County)

213. Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "212" above with the same force and effect as if fully set forth herein.

214. That subsequent to plaintiff's arrest, defendant, SUFFOLK, its agents, servants and/or employees, did maliciously cause a criminal prosecution to be commenced against plaintiff on in the District Court of the County of Suffolk, State of New York, by filing an accusatory instrument, without probable cause and in bad faith.

215. That subsequent to plaintiff's arrest, defendant, SPOTA, his agents, servants and/or employees did maliciously cause a criminal prosecution to be commenced against plaintiff, without probable cause and in bad faith.

216. That subsequent to plaintiff's arrest, defendant, RUGGIERI, did maliciously cause a criminal prosecution to be commenced against plaintiff, without probable cause and in bad faith.

28

217.    That subsequent to plaintiff's arrest, defendant, SULLIVAN, did maliciously cause a criminal prosecution to be commenced against plaintiff, without probable cause and in bad faith.

218.    That subsequent to plaintiff's arrest, defendant, DIVINCENZO, did maliciously cause a criminal prosecution to be commenced against plaintiff, without probable cause and in bad faith.

219.    In commencing and continuing said malicious prosecution, defendant, SUFFOLK, its agents, servants and/or employees caused plaintiff to be falsely charged with crimes in violation of the Penal Laws of the State of New York.

220.    In commencing and continuing said malicious prosecution, defendant, SPOTA, caused plaintiff to be falsely charged with crimes in violation of the Penal Laws of the State of New York.

221.    In commencing and continuing said malicious prosecution, defendant, RUGGIERI, caused plaintiff to be falsely charged with crimes in violation of the Penal Laws of the State of New York.

222.    In commencing and continuing said malicious prosecution, defendant, SULLIVAN, caused plaintiff to be falsely charged with crimes in violation of the Penal Laws of the State of New York.

223.    In commencing and continuing said malicious prosecution, defendant, DIVINCENZO, caused plaintiff to be falsely charged with crimes in violation of the Penal Laws of the State of New York.

224.    In commencing and continuing said malicious prosecution, defendant, WHITE, caused plaintiff to be falsely charged with crimes in violation of the Penal Laws of the State of New York.

225.    Plaintiff had not committed or attempted to commit any illegal act(s).

226.    Plaintiff had not given defendant, SUFFOLK, its agents, servants and/or employees probable cause to believe that she had committed the illegal acts of which she was falsely accused.

227.    Plaintiff had not given defendant, SPOTA, probable cause to believe that she had committed the illegal acts of which she was falsely accused.

228.    Plaintiff had not given defendant, RUGGIERI, probable cause to believe that she had committed the illegal acts of which she was falsely accused.

229.    Plaintiff had not given defendant, SULLIVAN, probable cause to believe that she had committed the illegal acts of which she was falsely accused.

230.    Plaintiff had not given defendant, DIVINCENZO, probable cause to believe that she had committed the illegal acts of which she was falsely accused.

231.    Plaintiff had not given defendant, WHITE, probable cause to believe that she had committed the illegal acts of which she was falsely accused.

232.    Defendant, SUFFOLK, its agents, servants and/or employees knew or should have known through the exercise of proper police and prosecutorial procedure and reasonable care that said investigation was flawed and incomplete.

233.    Defendant, SPOTA, knew or should have known through the exercise of proper prosecutorial procedure and reasonable care that said investigation was flawed and incomplete.

30

234. Defendant, RUGGIERI, knew or should have known through the exercise of proper prosecutorial procedure and reasonable care that said investigation was flawed and incomplete.

235. Defendant, SULLIVAN, knew or should have known through the exercise of proper prosecutorial procedure and reasonable care that said investigation was flawed and incomplete.

236. Defendant, DIVINCENZO, knew or should have known through the exercise of proper prosecutorial procedure and reasonable care that said investigation was flawed and incomplete.

237. Defendant, WHITE, knew or should have known through the exercise of proper police procedure and reasonable care that said investigation was flawed and incomplete.

238. Defendant, SUFFOLK, its agents, servants and/or employees willfully and wrongfully accused plaintiff of having committed crimes in violation of the Penal Laws of the State of New York.

239. Defendant, SPOTA, willfully and wrongfully accused plaintiff of having committed crimes in violation of the Penal Laws of the State of New York.

240. Defendant, RUGGIERI, willfully and wrongfully accused plaintiff of having committed crimes in violation of the Penal Laws of the State of New York.

241. Defendant, SULLIVAN, willfully and wrongfully accused plaintiff of having committed crimes in violation of the Penal Laws of the State of New York.

242. Defendant, DIVINCENZO, willfully and wrongfully accused plaintiff of having committed crimes in violation of the Penal Laws of the State of New York.

31

243. Defendant, WHITE, willfully and wrongfully accused plaintiff of having committed crimes in violation of the Penal Laws of the State of New York.

244. As a result of the malicious prosecution, plaintiff suffered and continues to suffer substantial and permanent damages.

245. The actions of Defendant, SPOTA heretofore described constitute unlawful and malicious prosecution designed to and did cause specific and serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

246. The actions of Defendant, RUGGIERI heretofore described constitute unlawful and malicious prosecution designed to and did cause specific and serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

247. The actions of Defendant, SULLIVAN heretofore described constitute unlawful and malicious prosecution designed to and did cause specific and serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

248. The actions of Defendant, DIVICENTO heretofore described constitute unlawful and malicious prosecution designed to and did cause specific and serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

249. The actions of Defendant, WHITE heretofore described constitute unlawful and malicious prosecution designed to and did cause specific and serious bodily harm, pain and

32

suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

250.    That said malicious prosecution caused plaintiff to sustain loss of income and a loss of earning capacity, to suffer severe emotional distress, emotional disturbances, humiliation and damage to her reputation, including the stigma of having a criminal record.

251.    By reason of the foregoing, plaintiffs demand judgment against defendants, SUFFOLK, SPOTA, RUGGIERI, SULLIVAN, DIVINCENZO and WHITE, in a sum of money which exceeds the jurisdictional limits of all courts of lesser jurisdiction.

## SIXTH CAUSE OF ACTION
### (42 U.S.C. §1983 - Malicious Prosecution - Nassau County)

252.    Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "251" above with the same force and effect as if fully set forth herein.

253.    That subsequent to plaintiff's arrest, defendant, NASSAU, its agents, servants and/or employees, did maliciously cause a criminal prosecution to be commenced against plaintiff in the District Court of the County of Nassau, State of New York, by filing an accusatory instrument, without probable cause and in bad faith.

254.    That subsequent to plaintiff's arrest, defendant, RICE, her agents, servants and/or employees did maliciously cause a criminal prosecution to be commenced against plaintiff, without probable cause and in bad faith.

255.    That subsequent to plaintiff's arrest, defendant, PLOTKIN, did maliciously cause a criminal prosecution to be commenced against plaintiff, without probable cause and in bad faith.

256.  That subsequent to plaintiff's arrest, defendant, MORRONE, did maliciously cause a criminal prosecution to be commenced against plaintiff, without probable cause and in bad faith.

257.  In commencing and continuing said malicious prosecution, defendant, NASSAU, its agents, servants and/or employees caused plaintiff to be falsely charged with crimes in violation of the Penal Laws of the State of New York.

258.  In commencing and continuing said malicious prosecution, defendant, RICE, caused plaintiff to be falsely charged with crimes in violation of the Penal Laws of the State of New York.

259.  In commencing and continuing said malicious prosecution, defendant, PLOTKIN, caused plaintiff to be falsely charged with crimes in violation of the Penal Laws of the State of New York.

260.  In commencing and continuing said malicious prosecution, defendant, MORRONE, caused plaintiff to be falsely charged with crimes in violation of the Penal Laws of the State of New York.

261.  In commencing and continuing said malicious prosecution, defendant, SCHEPIS, caused plaintiff to be falsely charged with crimes in violation of the Penal Laws of the State of New York.

262.  Plaintiff had not committed or attempted to commit any illegal act(s).

263.  Plaintiff had not given defendant, NASSAU, its agents, servants and/or employees probable cause to believe that she had committed the illegal acts of which she was falsely accused.

34

264.    Plaintiff had not given defendant, RICE, probable cause to believe that she had committed the illegal acts of which she was falsely accused.

265.    Plaintiff had not given defendant, PLOTKIN, probable cause to believe that she had committed the illegal acts of which she was falsely accused.

266.    Plaintiff had not given defendant, MORRONE, probable cause to believe that she had committed the illegal acts of which she was falsely accused.

267.    Plaintiff had not given defendant, SCHEPIS, probable cause to believe that she had committed the illegal acts of which she was falsely accused.

268.    Defendant, NASSAU, its agents, servants and/or employees knew or should have known through the exercise of proper police and prosecutorial procedure and reasonable care that said investigation was flawed and incomplete.

269.    Defendant, RICE, knew or should have known through the exercise of proper prosecutorial procedure and reasonable care that said investigation was flawed and incomplete.

270.    Defendant, PLOTKIN, knew or should have known through the exercise of proper prosecutorial procedure and reasonable care that said investigation was flawed and incomplete.

271.    Defendant, MORRONE, knew or should have known through the exercise of proper prosecutorial procedure and reasonable care that said investigation was flawed and incomplete.

272.    Defendant, SCHEPIS, knew or should have known through the exercise of proper police procedure and reasonable care that said investigation was flawed and incomplete.

35

273.    Defendant, NASSAU, its agents, servants and/or employees willfully and wrongfully accused plaintiff of having committed crimes in violation of the Penal Laws of the State of New York.

274.    Defendant, RICE, willfully and wrongfully accused plaintiff of having committed crimes in violation of the Penal Laws of the State of New York.

275.    Defendant, PLOTKIN, willfully and wrongfully accused plaintiff of having committed crimes in violation of the Penal Laws of the State of New York.

276.    Defendant, MORRONE, willfully and wrongfully accused plaintiff of having committed crimes in violation of the Penal Laws of the State of New York.

277.    Defendant, SCHEPIS, willfully and wrongfully accused plaintiff of having committed crimes in violation of the Penal Laws of the State of New York.

278.    As a result of the malicious prosecution, plaintiff suffered and continues to suffer substantial and permanent damages.

279.    The actions of Defendant, RICE heretofore described constitute unlawful and malicious prosecution designed to and did cause specific and serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

280.    The actions of Defendant, PLOTKIN heretofore described constitute unlawful and malicious prosecution designed to and did cause specific and serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

281.    The actions of Defendant, MORRONE heretofore described constitute unlawful and malicious prosecution designed to and did cause specific and serious bodily harm, pain and

suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

282. The actions of Defendant, SCHEPIS heretofore described constitute unlawful and malicious prosecution designed to and did cause specific and serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

283. That said malicious prosecution caused plaintiff to sustain loss of income and a loss of earning capacity, to suffer severe emotional distress, emotional disturbances, humiliation and damage to her reputation, including the stigma of having a criminal record.

284. By reason of the foregoing, plaintiffs demand judgment against defendants, NASSAU, RICE, PLOTKIN, MORRONE and SCHEPIS, in a sum of money which exceeds the jurisdictional limits of all courts of lesser jurisdiction.

## SEVENTH CAUSE OF ACTION
## (42 U.S.C. §1983 - Conspiracy)

285. Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "284" above with the same force and effect as if fully set forth herein.

286. That defendants, SUFFOLK, SPOTA, RUGGIERI, SULLIVAN, DIVINCENZO, WHITE, and defendants, NASSAU, RICE, PLOTKIN, MORRONE and SCHEPIS, under color of law, conspired with each other as well as with others, including but not limited to defendants, CITIGROUP, CITIBANK, CIS and FINN, to reach a mutual understanding and thereafter acted to undertake a course of conduct to injure, oppress, threaten and intimidate plaintiff in the free exercise and enjoyment of the rights and privileges and equal protection of the law secured to her by the Constitution of the United States, including the rights: to be free from false arrest and

37

false imprisonment; to associate and speak freely; to have fair and equal access to and seek redress in the courts; and to have fair and equal access to exculpatory evidence so as to be able to properly present a defense in a criminal matter.

287. That defendants, CITIGROUP, CITIBANK, CIS and FINN, were willful participants in joint action with defendants, SUFFOLK, SPOTA, RUGGIERI, SULLIVAN, DIVINCENZO, WHITE, and defendants, NASSAU, RICE, PLOTKIN, MORRONE and SCHEPIS, who were acting under color of law.

288. That defendants, CITIGROUP, CITIBANK and CIS, its agents, servants and/or employees, including but not limited to defendant, FINN, participated in the conspiracy to further the purpose and goals of protecting their relationship with their customers at the expense of individual minority community members and specifically, plaintiff, CAMILLE POUX whom said defendants believed to be unimportant, disposable and otherwise capable of being sacrificed for the benefit of defendants, CITIGROUP, CITIBANK's and CIS's financial interests.

289. That it was part of the conspiracy and defendants, SUFFOLK, SPOTA, RUGGIERI, SULLIVAN, DIVINCENZO, WHITE, NASSAU, RICE, PLOTKIN, MORRONE, SCHEPIS, as well as with others, including but not limited to defendants, CITIGROUP, CITIBANK, CIS and FINN, acted in furtherance of said conspiracy: by willfully, recklessly and negligently accused plaintiff of committing a criminal act without probable cause; by falsely arresting and imprisoning plaintiff; by maliciously prosecuting plaintiff; by covering up wrong doing by defendants, their agents, servants and/or employees, including but not limited to the deliberate, willful, malicious and/or negligent alteration, loss and/or destruction of exculpatory evidence, the failure to present exculpatory evidence to the grand jury, and the misrepresentation of evidence to the grand jury; by suppressing exculpatory evidence; and by submitting false

police reports, statements and/or testimony to support and corroborate the false charges against plaintiff.

290.     As a result of the aforesaid conspiracy, plaintiffs were caused to suffer personal injuries, violation of civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom and damage to their reputation and standing within their community.

291.     By reason of the foregoing, plaintiffs demand judgment against defendants in a sum of money which exceeds the jurisdictional limits of all the Courts of lesser jurisdiction.

## EIGHTH CAUSE OF ACTION
### (42 U.S.C. §1983 – Failure to Intercede)

292.     Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "291" above with the same force and effect as if fully set forth herein.

293.     By their conduct and under color of state law, defendants, SPOTA, RUGGIERI, SULLIVAN, DIVINCENZO, WHITE, RICE, PLOTKIN, MORRONE and SCHEPIS, and other agents, servants and/or employees of defendants, SUFFOLK and NASSAU, each had opportunities to intercede on behalf of plaintiff to prevent the deprivation of her civil rights by defendants, their agents, servants and/or employees, but due to their intentional conduct or deliberate indifference declined or refused to do so.

294.     As a result of the aforesaid failure to intercede, plaintiffs were caused to suffer personal injuries, violation of civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom and damage to their reputation and standing within their community.

295. By reason of the foregoing, plaintiffs demand judgment against defendants in a sum of money which exceeds the jurisdictional limits of all the Courts of lesser jurisdiction.

## NINTH CAUSE OF ACTION
### (42 U.S.C. §§1981, 1983 – First, Fourth and Fourteenth Amendment Violations)

296. Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "295" above with the same force and effect as if fully set forth herein.

297. That by their conduct and under color of law, defendants deprived plaintiff of her First Amendment right to have access to and seek redress in the courts.

298. That defendants engaged in a cover up in order to conceal the wrongful and unlawful conduct taken against plaintiff.

299. That defendants' efforts to conceal the truth continue to the detriment of plaintiff.

300. As a result of defendants' violations of plaintiff's civil rights guaranteed by First, Fourth and Fourteenth Amendments, plaintiffs were caused to suffer personal injuries, violation of civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom and damage to their reputation and standing within their community.

301. By reason of the foregoing, plaintiffs demand judgment against defendants in a sum of money which exceeds the jurisdictional limits of all the Courts of lesser jurisdiction.

## TENTH CAUSE OF ACTION
### (42 U.S.C. §1985 – Conspiracy with Racial Animus)

302. Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "301" above with the same force and effect as if fully set forth herein.

303.    That defendants, SPOTA, RUGGIERI, SULLIVAN, DIVINCENZO, WHITE,
RICE, PLOTKIN, MORRONE and SCHEPIS, and other agents, servants and/or employees of
defendants, SUFFOLK and NASSAU, under color of law, conspired with each other, with
defendants, CITIGROUP, CITIBANK and CIS, and their agents, servants and/or employees,
including but not limited to defendant, FINN, reached a mutual understanding, and acted to
undertake a course of conduct to injure, oppress, threaten and intimidate plaintiff in the free
exercise and enjoyment of the rights and privileges and equal protection of the law secured to her
by the Constitution, including the rights: to be free from false arrest and imprisonment; to be
free from malicious prosecution; to associate and speak freely; to have reasonable and fair access
to exculpatory evidence in the possession and/or control of defendants; and to have access to and
seek redress in the courts.

304.    That defendants, CITIGROUP, CITIBANK and CIS, and their agents, servants
and/or employees, including but not limited to defendant, FINN, were willful participants in joint
action with defendants, SPOTA, RUGGIERI, SULLIVAN, DIVINCENZO, WHITE, RICE,
PLOTKIN, MORRONE and SCHEPIS, and other agents, servants and/or employees of
defendants, SUFFOLK and NASSAU, acting under color of law.

305.    That it was part of the conspiracy that defendants, SPOTA, RUGGIERI,
SULLIVAN, DIVINCENZO, WHITE, RICE, PLOTKIN, MORRONE and SCHEPIS, and other
agents, servants and/or employees of defendants, SUFFOLK and NASSAU, acted in furtherance
of said conspiracy: by willfully, recklessly and negligently accused plaintiff of committing a
criminal act without probable cause; by falsely arresting and imprisoning plaintiff; by
maliciously prosecuting plaintiff; by covering up wrong doing by defendants, their agents,
servants and/or employees that included but was not limited to the deliberate, willful, malicious

41

and/or negligent alteration, loss and/or destruction of exculpatory evidence; by failing to present exculpatory evidence to the grand jury; by misrepresenting evidence to the grand jury; by suppressing exculpatory evidence; and by submitting false police reports, statements, or testimony to support and corroborate the false charges lodged against plaintiff.

306.    That in furtherance of the conspiracy, and to conceal the crimes and misconduct of defendants, SPOTA, RUGGIERI, SULLIVAN, DIVINCENZO, WHITE, RICE, PLOTKIN, MORRONE and SCHEPIS, as well as defendants, CITIGROUP, CITIBANK and CIS, and their agents, servants and/or employees, including but not limited to defendant, FINN, all the defendants, with the exception of the municipalities, engaged in a cover up.

307.    That the conduct of the defendants was motivated by racial animus and by their desire to injure, oppress, threaten, and intimidate plaintiff because of her race, African-American.

308.    That defendants' racial and ethnic animus was expressed by their demeaning mannerisms and ethnically insulting remarks directed at plaintiff by defendants, WHITE and SCHEPIS, during her arrests; by the policies of discrimination enacted, acquiesced to, and enforced by defendants; by the various functional assertions by defendants that all female members of minority communities look alike, to wit: that there is no functional difference between the person depicted in defendants, CITIGROUP, CITIBANK and/or CIS's security films, who is a tall, thin, light-skinned female member of a minority community and plaintiff, who is a short, full-figured, dark complexioned female.

309.    As a result of the conspiracy with racial animus, plaintiffs were caused to suffer personal injuries, violation of civil rights, negligent and intentional infliction of emotional

distress, anguish, anxiety, fear, humiliation, loss of freedom and damage to their reputation and standing within their community.

310.    By reason of the foregoing, plaintiffs demand judgment against defendants in a sum of money which exceeds the jurisdictional limits of all the Courts of lesser jurisdiction.

## ELEVENTH CAUSE OF ACTION
### (42 U.S.C. §1986 – Action for Negligence to Prevent)

311.    Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "310" above with the same force and effect as if fully set forth herein.

312.    Defendants, SPOTA, RUGGIERI, SULLIVAN, DIVINCENZO, WHITE, RICE, PLOTKIN, MORRONE and SCHEPIS, their agents, servants and/or employees had knowledge that a cover up and a conspiracy to cover up the violation of plaintiff's civil rights were in progress, had the power to prevent or aid in preventing the cover up and conspiracy from continuing, and neglected or refused to do so.

313.    With reasonable diligence, defendants could have promptly reported the violation of plaintiff's civil rights to their superiors. Their failure contributed to the following: plaintiff's false arrest and false imprisonment; plaintiff's malicious prosecution and prolongation of same; and plaintiff's deprivation of access to the courts by the destruction, alteration and suppression of exculpatory evidence.

314.    As a result of the defendants' neglect to prevent, plaintiffs were caused to suffer personal injuries, violation of civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom and damage to their reputation and standing within their community.

315.    By reason of the foregoing, plaintiffs demand judgment against defendants in a sum of money which exceeds the jurisdictional limits of all the Courts of lesser jurisdiction.

## TWELFTH CAUSE OF ACTION
### (42 U.S.C. §1983 – Conspiracy Between Suffolk County and Citibank and CIS)

316.    Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "315" above with the same force and effect as if fully set forth herein.

317.    Acting jointly over a period of many years, defendant, SUFFOLK, has developed policies, procedures and customs for the exclusive benefit of financial institutions within its jurisdiction whereby said financial institutions are allowed to and moreover encouraged to assume police authority and functions to "investigate" alleged criminal activities associated with the accounts of said financial institutions.

318.    That defendant, SUFFOLK, its agents, servants and/or employees are aware, should be aware and are otherwise deliberately indifferent to defendants, CITIGROUP, CITIBANK's and CIS's use of their granted police powers to discriminate against minority community members for the benefit of defendants, CITIBANK's and CIS's financial interests.

319.    That defendant, SUFFOLK, its agents, servants and/or employees have engaged in a conspiracy with defendants, CITIGROUP, CITIBANK and CIS, their agents, servants and/or employees to cover up the wrong doing of defendants, CITIGROUP, CITIBANK and CIS, their agents, servants and/or employees: by recklessly and negligently accusing plaintiff of committing a criminal act without probable cause; by falsely arresting and imprisoning plaintiff; by maliciously prosecuting plaintiff; by covering up wrong doing by defendants, their agents, servants and/or employees; by deliberately, willfully, maliciously and/or negligently altering, losing and/or destroying exculpatory evidence; by failing to present exculpatory evidence to the

44

grand jury; by misrepresenting evidence to the grand jury; by suppressing exculpatory evidence; and by submitting false police reports, statements and/or testimony to support and corroborate the false charges filed against plaintiff, all for the benefit of defendants, CITIGROUP's, CITIBANK's and CIS's financial interests.

320. As a result of this conspiracy between defendant, SUFFOLK, and defendants, CITIGROUP, CITIBANK and CIS, plaintiffs were caused to suffer personal injuries, violation of civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom and damage to their reputation and standing within their community.

321. By reason of the foregoing, plaintiffs demand judgment against defendants in a sum of money which exceeds the jurisdictional limits of all the Courts of lesser jurisdiction.

## THIRTEENTH CAUSE OF ACTION
### (42 U.S.C. §1983 – Conspiracy Between Nassau County and Citibank and CIS)

322. Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "321" above with the same force and effect as if fully set forth herein.

323. Acting jointly over a period of many years, defendant, NASSAU, has developed policies, procedures and customs for the exclusive benefit of financial institutions within its jurisdiction whereby said financial institutions are allowed to and moreover encouraged to assume police authority and functions to "investigate" alleged criminal activities associated with the accounts of said financial institutions.

324. That defendant, NASSAU, its agents, servants and/or employees are aware, should be aware and are otherwise deliberately indifferent to defendants, CITIGROUP's, CITIBANK's and CIS's use of their granted police powers to discriminate against minority

45

community members for the benefit of defendants, CITIGROUP's, CITIBANK's and CIS's financial interests.

325. That defendant, NASSAU, its agents, servants and/or employees have engaged in a conspiracy with defendants, CITIGROUP, CITIBANK and CIS, their agents, servants and/or employees to cover up the wrong doing of defendants, CITIGROUP, CITIBANK and CIS, their agents, servants and/or employees: by recklessly and negligently accusing plaintiff of committing a criminal act without probable cause; by falsely arresting and imprisoning plaintiff; by maliciously prosecuting plaintiff; by covering up wrong doing by defendants, their agents, servants and/or employees; by deliberately, willfully, maliciously and/or negligently altering, losing and/or destroying exculpatory evidence; by failing to present exculpatory evidence to the grand jury; by misrepresenting evidence to the grand jury; by suppressing exculpatory evidence; and by submitting false police reports, statements and/or testimony to support and corroborate the false charges filed against plaintiff, all for the benefit of defendants, CITIGROUP, CITIBANK's and CIS's financial interests.

326. As a result of this conspiracy between defendant, NASSAU, and defendants, CITIGROUP, CITIBANK and CIS, plaintiffs were caused to suffer personal injuries, violation of civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom and damage to their reputation and standing within their community.

327. By reason of the foregoing, plaintiffs demand judgment against defendants in a sum of money which exceeds the jurisdictional limits of all the Courts of lesser jurisdiction.

## FOURTEENTH CAUSE OF ACTION
### (Pendent Claim State Law Claims against Suffolk)

328.    Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "327" above with the same force and effect as if fully set forth herein.

329.    That the actions of defendant, SUFFOLK, its agents, servants and/or employees heretofore described constitute false arrest, false imprisonment, assault and battery and malicious prosecution, all in violation of New York State law.

330.    That the actions of defendant, WHITE, heretofore described constitute false arrest, false imprisonment and assault and battery and malicious prosecution all in violation of New York State law.

331.    That the actions of defendant, SPOTA, heretofore described constitute a malicious prosecution in violation of New York State law.

332.    That the actions of defendant, RUGGIERI, heretofore described constitute a malicious prosecution in violation of New York State law.

333.    That the actions of defendant, SULLIVAN, heretofore described constitute a malicious prosecution in violation of New York State law.

334.    That the actions of defendant, DIVINCENZO, heretofore described constitute a malicious prosecution in violation of New York State law.

335.    As a result of the foregoing, plaintiffs were caused to suffer personal injuries, violation of civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom and damage to their reputation and standing within their community.

336.    By reason of the foregoing, plaintiffs demand judgment against defendants in a sum of money which exceeds the jurisdictional limits of all the Courts of lesser jurisdiction.

## FIFTEENTH CAUSE OF ACTION
### (Pendent Claim State Law Claims Against Nassau County)

337.    Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "336" above with the same force and effect as if fully set forth herein.

338.    That the actions of defendant, NASSAU, its agents, servants and/or employees heretofore described constitute false arrest, false imprisonment, assault and battery and malicious prosecution in violation of New York State law.

339.    That the actions of defendant, SCHEPIS, heretofore described constitute false arrest, false imprisonment, assault and battery and malicious prosecution in violation of New York State law.

340.    That the actions of defendant, RICE, heretofore described constitute a malicious prosecution in violation of New York State law.

341.    As a result of the foregoing, plaintiffs were caused to suffer personal injuries, violation of civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom and damage to their reputation and standing within their community.

342.    By reason of the foregoing, plaintiffs demand judgment against defendants in a sum of money which exceeds the jurisdictional limits of all the Courts of lesser jurisdiction.

## SIXTEENTH CAUSE OF ACTION
### (Pendent Claims for Negligent Hiring, Training, Supervising and Retaining by Suffolk County)

343.    Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "342" above with the same force and effect as if fully set forth herein.

48

344. That defendant, SUFFOLK, hired and retained in its employ police officers, including but not limited to defendant, WHITE, with knowledge that said police officers lacked the experience to be employed by the aforementioned defendant, and were, therefore, unfit to be police officers.

345. That defendant, SUFFOLK, hired and retained in its employ police officers, including but not limited to defendant, WHITE, with knowledge that said police officers lacked the deportment to be employed by the aforementioned defendant, and were, therefore, unfit to be police officers.

346. That defendant, SUFFOLK, hired and retained in its employ police officers, including but not limited to defendant, WHITE, with knowledge that said police officers had vicious propensities, and were therefore, unfit to be a police officer.

347. That defendant, SPOTA, hired and retained in his employ Detective Investigators, including but not limited to defendant, WHITE, with knowledge that said detective investigator lacked the experience to be employed by the aforementioned defendant, and was, therefore, unfit to be a detective investigator.

348. That defendant, SPOTA, hired and retained in his employ defendant, RUGGIERI, with knowledge that said prosecutor lacked the experience to be employed by the aforementioned defendant, and was, therefore, unfit to be a prosecutor.

349. That defendant, SPOTA, hired and retained in his employ defendant, SULLIVAN, with knowledge that said prosecutor lacked the experience to be employed by the aforementioned defendant, and was, therefore, unfit to be a prosecutor.

350.    That defendant, SPOTA, hired and retained in his employ defendant,

DIVINCENZO, with knowledge that said prosecutor lacked the experience to be employed by

the aforementioned defendant, and was, therefore, unfit to be a prosecutor.

351.    That defendant, SPOTA, hired and retained in his employ defendant, RUGGIERI,

with knowledge that said prosecutor lacked the deportment to be employed by the

aforementioned defendant, and was, therefore, unfit to be a prosecutor.

352.    That defendant, SPOTA, hired and retained in his employ defendant,

SULLIVAN, with knowledge that said prosecutor lacked the deportment to be employed by the

aforementioned defendant, and was, therefore, unfit to be a prosecutor.

353.    That defendant, SPOTA, hired and retained in his employ defendant,

DIVINCENZO, with knowledge that said prosecutor lacked the deportment to be employed by

the aforementioned defendant, and was, therefore, unfit to be a prosecutor.

354.    As a result of the foregoing, plaintiffs were caused to suffer personal injuries,

violation of civil rights, negligent and intentional infliction of emotional distress, anguish,

anxiety, fear, humiliation, loss of freedom and damage to their reputation and standing within

their community.

355.    By reason of the foregoing, plaintiffs demand judgment against defendants in a

sum of money which exceeds the jurisdictional limits of all the Courts of lesser jurisdiction.

### SEVENTEENTH CAUSE OF ACTION
### (Pendent Claims for Negligent Hiring, Training,
### Supervising and Retaining by Nassau County)

356.    Plaintiffs repeat and reiterate each and every allegation contained in paragraphs

numbered "1" through "355" above with the same force and effect as if fully set forth herein.

50

357. That defendant, NASSAU, hired and retained in its employ police officers, including but not limited to defendant, SCHEPIS, with knowledge that said police officers lacked the experience to be employed by the aforementioned defendant, and were, therefore, unfit to be a police officers.

358. That defendant, NASSAU, hired and retained in its employ police officers, including but not limited to defendant, SCHEPIS, with knowledge that said police officers lacked the deportment to be employed by the aforementioned defendant, and were, therefore, unfit to be a police officers.

359. That defendant, NASSAU, hired and retained in its employ police officers, including but not limited to defendant, SCHEPIS, with knowledge that said police officers had vicious propensities, and were, therefore, unfit to be a police officers.

360. That defendant, RICE, hired and retained in his employ defendant, PLOTKIN, with knowledge that said prosecutor lacked the experience to be employed by the aforementioned defendant, and was, therefore, unfit to be a prosecutor.

361. That defendant, RICE, hired and retained in his employ defendant, MORRONE, with knowledge that said prosecutor lacked the experience to be employed by the aforementioned defendant, and was, therefore, unfit to be a prosecutor.

362. That defendant, RICE, hired and retained in his employ defendant, PLOTKIN, with knowledge that said prosecutor lacked the deportment to be employed by the aforementioned defendant, and was, therefore, unfit to be a prosecutor.

363. That defendant, RICE, hired and retained in his employ defendant, MORRONE, with knowledge that said prosecutor lacked the deportment to be employed by the aforementioned defendant, and was, therefore, unfit to be a prosecutor.

51

364. As a result of the foregoing, plaintiffs were caused to suffer personal injuries, violation of civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom and damage to their reputation and standing within their community.

365. By reason of the foregoing, plaintiffs demand judgment against defendants in a sum of money which exceeds the jurisdictional limits of all the Courts of lesser jurisdiction.

## EIGHTEENTH CAUSE OF ACTION
### (Pendent Claims for Negligence against Suffolk County)

366. Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "365" above with the same force and effect as if fully set forth herein.

367. That defendant, SUFFOLK's agents, servants and/or employees, including but not limited to defendant, WHITE, negligently, carelessly and recklessly performed their police duties in that he failed to exercise such care in the performance of his police duties as a reasonably prudent police officer would have used under similar circumstances.

368. That defendant, WHITE, negligently, carelessly and recklessly performed his police duties in that he failed to exercise such care in the performance of his police duties as a reasonably prudent police officer would have used under similar circumstances.

369. That defendant, SUFFOLK, its agents, servants and/or employees negligently, carelessly and recklessly performed their prosecutorial duties in that they failed to exercise such care in the performance of their prosecutorial duties as a reasonably prudent prosecutor would have used under similar circumstances.

370.    That defendant, SPOTA, negligently, carelessly and recklessly performed his prosecutorial duties in that he failed to exercise such care in the performance of his prosecutorial duties as a reasonably prudent prosecutor would have used under similar circumstances.

371.    That defendant, RUGGIERI, negligently, carelessly and recklessly performed her prosecutorial duties in that she failed to exercise such care in the performance of her prosecutorial duties as a reasonably prudent prosecutor would have used under similar circumstances.

372.    That defendant, SULLIVAN, negligently, carelessly and recklessly performed her prosecutorial duties in that she failed to exercise such care in the performance of her prosecutorial duties as a reasonably prudent prosecutor would have used under similar circumstances.

373.    That defendant, DIVINCENZO, negligently, carelessly and recklessly performed his prosecutorial duties in that he failed to exercise such care in the performance of his prosecutorial duties as a reasonably prudent prosecutor would have used under similar circumstances.

374.    That the aforementioned occurrences, to wit:  the false arrest, detainment and imprisonment of plaintiff; the assault and battery against plaintiff; the violation of plaintiff's civil and constitutional rights; the malicious prosecution of plaintiff; and the resulting injuries to the mind and body, were caused by reason of the negligence of defendants, SUFFOLK, WHITE, SPOTA, RUGGIERI, SULLIVAN and DIVINCENZO, their agents, servants and/or employees, without any negligence on the part of plaintiff.

375.    As a result of the foregoing, plaintiffs were caused to suffer personal injuries, violation of civil rights, negligent and intentional infliction of emotional distress, anguish,

anxiety, fear, humiliation, loss of freedom and damage to their reputation and standing within their community.

376. By reason of the foregoing, plaintiffs demand judgment against defendants in a sum of money which exceeds the jurisdictional limits of all the Courts of lesser jurisdiction.

## NINETEENTH CAUSE OF ACTION
### (Pendent Claims of Negligence Against Nassau County)

377. Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "376" above with the same force and effect as if fully set forth herein.

378. That defendant, NASSAU's agents, servants and/or employees, including but not limited to defendant, SCHEPIS, negligently, carelessly and recklessly performed their police duties in that he failed to exercise such care in the performance of his police duties as a reasonably prudent police officer would have used under similar circumstances.

379. That defendant, SCHEPIS, negligently, carelessly and recklessly performed his police duties in that he failed to exercise such care in the performance of his police duties as a reasonably prudent police officer would have used under similar circumstances.

380. That defendant, NASSAU, its agents, servants and/or employees negligently, carelessly and recklessly performed their prosecutorial duties in that they failed to exercise such care in the performance of their prosecutorial duties as a reasonably prudent prosecutor would have used under similar circumstances.

381. That defendant, RICE, negligently, carelessly and recklessly performed her prosecutorial duties in that she failed to exercise such care in the performance of her prosecutorial duties as a reasonably prudent prosecutor would have used under similar circumstances.

382. That defendant, PLOTKIN, negligently, carelessly and recklessly performed her prosecutorial duties in that she failed to exercise such care in the performance of her prosecutorial duties as a reasonably prudent prosecutor would have used under similar circumstances.

383. That defendant, MORRONE, negligently, carelessly and recklessly performed her prosecutorial duties in that she failed to exercise such care in the performance of her prosecutorial duties as a reasonably prudent prosecutor would have used under similar circumstances.

384. That the aforementioned occurrences, to wit: the false arrest, detainment and imprisonment of plaintiff; the assault and battery against plaintiff; the violation of plaintiff's civil and constitutional rights; the malicious prosecution of plaintiff; and the resulting injuries to the mind and body were caused solely by reason of the negligence of defendants, NASSAU, SCHEPIS, RICE, PLOTKIN and MORRONE, their agents, servants and/or employees, without any negligence on the part of plaintiff.

385. As a result of the foregoing, plaintiffs were caused to suffer personal injuries, violation of civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom and damage to their reputation and standing within their community.

386. By reason of the foregoing, plaintiffs demand judgment against defendants in a sum of money which exceeds the jurisdictional limits of all the Courts of lesser jurisdiction.

## TWENTIETH CAUSE OF ACTION
### (Pendent Claims of Intentional and Negligent
### Infliction of Emotional Distress)

387.     Plaintiffs repeat and reiterate each and every allegation contained in paragraphs
numbered "1" through "386" above with the same force and effect as if fully set forth herein.

388.     That defendant, WHITE's conduct towards plaintiff was so outrageous and
shocking that it exceeded all reasonable bounds of decency tolerated by the average member of
the community.

389.     That defendant, WHITE, acted with the desire to cause plaintiff mental distress or
acted under circumstances known to him which made it substantially certain that he would cause
such mental distress.

390.     That defendant, WHITE, acted with utter disregard of the consequences of his
actions.

391.     That defendant, SPOTA's conduct towards plaintiff was so outrageous and
shocking that it exceeded all reasonable bounds of decency tolerated by the average member of
the community.

392.     That defendant, SPOTA, acted with the desire to cause plaintiff mental distress or
acted under circumstances known to him which made it substantially certain that he would cause
such mental distress.

393.     That defendant, SPOTA, acted with utter disregard of the consequences of his
actions.

394.     That defendant, RUGGIERI's conduct towards plaintiff was so outrageous and
shocking that it exceeded all reasonable bounds of decency tolerated by the average member of
the community.

56

395. That defendant, RUGGIERI, acted with the desire to cause plaintiff mental distress or acted under circumstances known to her which made it substantially certain that she would cause such mental distress.

396. That defendant, RUGGIERI, acted with utter disregard of the consequences of her actions.

397. That defendant, SULLIVAN conduct towards plaintiff was so outrageous and shocking that it exceeded all reasonable bounds of decency tolerated by the average member of the community.

398. That defendant, SULLIVAN, acted with the desire to cause plaintiff mental distress or acted under circumstances known to her which made it substantially certain that she would cause such mental distress.

399. That defendant, SULLIVAN, acted with utter disregard of the consequences of her actions.

400. That defendant, DIVINCENZO's conduct towards plaintiff was so outrageous and shocking that it exceeded all reasonable bounds of decency tolerated by the average member of the community.

401. That defendant, DIVINCENZO, acted with the desire to cause plaintiff mental distress or acted under circumstances known to him which made it substantially certain that he would cause such mental distress.

402. That defendant, DIVINCENZO, acted with utter disregard of the consequences of his actions.

57

403. That defendant, SCHEPIS' conduct towards plaintiff was so outrageous and shocking that it exceeded all reasonable bounds of decency tolerated by the average member of the community.

404. That defendant, SCHEPIS, acted with the desire to cause plaintiff mental distress or acted under circumstances known to him which made it substantially certain that he would cause such mental distress.

405. That defendant, SCHEPIS, acted with utter disregard of the consequences of his actions.

406. That defendant, RICE's conduct towards plaintiff was so outrageous and shocking that it exceeded all reasonable bounds of decency tolerated by the average member of the community.

407. That defendant, RICE, acted with the desire to cause plaintiff mental distress or acted under circumstances known to her which made it substantially certain that she would cause such mental distress.

408. That defendant, RICE, acted with utter disregard of the consequences of her actions.

409. That defendant, PLOTKIN's conduct towards plaintiff was so outrageous and shocking that it exceeded all reasonable bounds of decency tolerated by the average member of the community.

410. That defendant, PLOTKIN, acted with the desire to cause plaintiff mental distress or acted under circumstances known to her which made it substantially certain that she would cause such mental distress.

58

411.    That defendant, PLOTKIN, acted with utter disregard of the consequences of her actions.

412.    That defendant, MORRONE's conduct towards plaintiff was so outrageous and shocking that it exceeded all reasonable bounds of decency tolerated by the average member of the community.

413.    That defendant, MORRONE, acted with the desire to cause plaintiff mental distress or acted under circumstances known to her which made it substantially certain that she would cause such mental distress.

414.    That defendant, MORRONE, acted with utter disregard of the consequences of her actions.

415.    As a result of the foregoing, plaintiff has sustained severe and debilitating emotional and psychological distress, anguish, anxiety, fear and humiliation.

416.    By reason of the foregoing, plaintiffs demand judgment against defendants in a sum of money which exceeds the jurisdictional limits of all the Courts of lesser jurisdiction.

### TWENTY-FIRST CAUSE OF ACTION
### (42 U.S.C. §1983 – Monell Claim against Suffolk County)

417.    Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "415" above as if fully set forth herein.

418.    The supervisors and policy making officers of defendant, SUFFOLK, and its Police Department, as a matter of policy, have failed to take steps to terminate the above detailed practices and have failed to discipline or otherwise properly supervise the individuals engaged in such practices.

419.    Defendant, SUFFOLK, has failed to properly and effectively train their employees with regard to proper constitutional and statutory limits on the exercise of their authority, and such failure continues to this day.

420.    Defendant, SUFFOLK, hired and retained in its employ certain police officers, including, but not limited to, defendant, WHITE, with knowledge that said police officer had vicious propensities and was, therefore, unfit to be police officers.

421.    At all times material to this Complaint, defendant, SUFFOLK, acting through its police department, had in effect de facto policies, practices and customs that were a direct and proximate cause of the unconstitutional conduct of defendant, WHITE.

422.    These policies, practices and customs include, inter alia: permitting private concerns to act as police officers and/or investigative officers; failing to properly screen, supervise, discipline, transfer, counsel, or otherwise control police officers engaged in the in unconstitutional conduct, particularly those who are repeatedly accused of such acts; the police code of silence wherein police officers regularly cover up police abuse of power by telling false and incomplete stories.

423.    The policy of allowing private concerns to perform police tasks and of failing to screen, discipline, supervise, counsel, transfer, control and correct unconstitutional patterns or conditions, is evidenced, inter alia, by the following:

a)      Defendant relinquished its duties to investigate allege criminal activity to private concerns;

b)      The fact that in only a small percentage of cases involving complaints against police officers is some form of discipline recommended.

c) The fact that cases where complaints have been lodged against police officers were inadequately investigated.

d) The fact that the decision as to whether to discipline a police officer is taken relying primarily on police officers to conduct the investigations of alleged misconduct.

e) The fact that of the complaints that were found to be substantiated, most do not result in any kind of meaningful discipline.

424. The policymakers of the Police Department and the County of Suffolk knew or should have known that police officers, including but not limited to defendant WHITE, were violating people's Constitutional rights and that these police officers were taking actions that were shocking the conscience or otherwise violating the substantive due process rights of the people of the County of Suffolk.

425. The policymakers of the Police Department and the County of Suffolk knew or should have known that private concerns such as Citibank and CIS were violating citizens' constitutional rights and did not take steps to correct these violations.

426. The fact that in the vast majority, if not all, of police abuse cases that result in verdicts or substantial settlements for the victims, defendant, SUFFOLK, and the Suffolk County Police Department imposes no discipline, either before or after the Court resolution, almost never even reopens an investigation previously conducted after such a resolution; and sometimes promotes the officer to a position of greater authority despite the resolution.

427. Defendant, SUFFOLK, and the Suffolk County Police Department failed to effectively screen, hire, train, supervise and discipline its police officers, including, but not limited to, defendant, WHITE, herein, for their propensity for violence, including excessive use of force and restraint, lack of truthfulness and for their failure to protect citizens from

unconstitutional conduct of other police officers, thereby permitting and allowing defendant, WHITE, herein to falsely imprison, assault and batter and/or excessively restrain plaintiff and to otherwise cause her injury and violate her federal and state constitutional rights, or to permit these action to take place with their knowledge or consent.

428.    Defendant, WHITE and other police officers, had been the subject of prior civilian and departmental complaints of misconduct that put, or should have put, defendant, SUFFOLK, and the Suffolk County Police Department on notice that defendant, WHITE and other police officer were likely to engage in conduct that would violate the civil and constitutional rights of the public, such as the conduct complained of by plaintiff herein.

429.    Defendant, SUFFOLK, failed to put into place and otherwise maintained an inadequate structure for risk containment and stress management relative to its police officers. Inter alia, the structure was deficient at the time of pre-selection and selection to evaluation and exchange within the command structure about the performance of individual police officers; to the training of supervisory personnel to effectively and adequately evaluate performance of an officer; and to otherwise put the command structure on notice that an individual was at significant levels of risk to the public at large or to specific segments thereof. The net effect of this was to permit police officers of the Suffolk County Police Department to function at levels of significant and substantial risk to the public.

430.    As a result of the foregoing, conscious policies, practices, customs or usages, defendant, SUFFOLK, has permitted and allowed for the employment and retention of individuals whose individual circumstances place the public or segments thereof at substantial risk of being the victims of violent behavior. Such policies, practices, customs or usages are a

direct and proximate cause of the conduct alleged herein and otherwise a direct and proximate cause of the injuries to plaintiff herein.

431. As a result of the foregoing, plaintiffs were caused to suffer personal injuries, violation of civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damage to their reputation and standing within their community.

432. As a result of the foregoing, plaintiffs demand judgment against defendants in a sum of money, which exceeds the jurisdictional limits of all the Courts of lesser jurisdiction.

## TWENTY-SECOND CAUSE OF ACTION
### (42 U.S.C. §1983 – Monell Claim against Nassau County)

433. Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "432" above as if fully set forth herein.

434. The supervisors and policy making officers of defendant, NASSAU, and its Police Department, as a matter of policy, have failed to take steps to terminate the above detailed practices and have failed to discipline or otherwise properly supervise the individuals engaged in such practices.

435. Defendant, NASSAU, has failed to properly and effectively train their employees with regard to proper constitutional and statutory limits on the exercise of their authority, and such failure continues to this day.

436. Defendant, NASSAU, hired and retained in its employ certain police officers, including, but not limited to, defendant, SCHEPIS, with knowledge that said police officer had vicious propensities and was, therefore, unfit to be police officers.

63

437. At all times material to this Complaint, defendant, NASSAU, acting through its police department, had in effect de facto policies, practices and customs that were a direct and proximate cause of the unconstitutional conduct of defendant, SCHEPIS.

438. These policies, practices and customs include, inter alia: permitting private concerns to act as police officers and/or investigative officers; failing to properly screen, supervise, discipline, transfer, counsel, or otherwise control police officers engaged in the in unconstitutional conduct, particularly those who are repeatedly accused of such acts; the police code of silence wherein police officers regularly cover up police abuse of power by telling false and incomplete stories.

439. The policy of allowing private concerns to perform police tasks and of failing to screen, discipline, supervise, counsel, transfer, control and correct unconstitutional patterns or conditions, is evidenced, inter alia, by the following:

a) Defendant relinquished its duties to investigate allege criminal activity to private concerns;

b) The fact that in only a small percentage of cases involving complaints against police officers is some form of discipline recommended.

c) The fact that cases where complaints have been lodged against police officers were inadequately investigated.

d) The fact that the decision as to whether to discipline a police officer is taken relying primarily on police officers to conduct the investigations of alleged misconduct.

e) The fact that of the complaints that were found to be substantiated, most do not result in any kind of meaningful discipline.

64

440. The policymakers of the Police Department and the County of Nassau knew or should have known that police officers, including but not limited to defendant SCHEPIS, were violating people's Constitutional rights and that these police officers were taking actions that were shocking the conscience or otherwise violating the substantive due process rights of the people of the County of Nassau.

441. The policymakers of the Police Department and the County of Nassau knew or should have known that private concerns such as Citibank and CIS were violating citizens' constitutional rights and did not take steps to correct these violations.

442. The fact that in the vast majority, if not all, of police abuse cases that result in verdicts or substantial settlements for the victims, defendant, NASSAU, and the Nassau County Police Department imposes no discipline, either before or after the Court resolution, almost never even reopens an investigation previously conducted after such a resolution; and sometimes promotes the officer to a position of greater authority despite the resolution.

443. Defendant, NASSAU, and the Nassau County Police Department failed to effectively screen, hire, train, supervise and discipline its police officers, including, but not limited to, defendant, SCHEPIS, herein, for their propensity for violence, including excessive use of force and restraint, lack of truthfulness and for their failure to protect citizens from unconstitutional conduct of other police officers, thereby permitting and allowing defendant, SCHEPIS, herein to falsely imprison, assault and batter and/or excessively restrain plaintiff and to otherwise cause her injury and violate her federal and state constitutional rights, or to permit these action to take place with their knowledge or consent.

444. Defendant, SCHEPIS and other police officers, had been the subject of prior civilian and departmental complaints of misconduct that put, or should have put, defendant,

65

NASSAU, and the Nassau County Police Department on notice that defendant, SCHEPIS and other police officer were likely to engage in conduct that would violate the civil and constitutional rights of the public, such as the conduct complained of by plaintiff herein.

445. Defendant, NASSAU, failed to put into place and otherwise maintained an inadequate structure for risk containment and stress management relative to its police officers. Inter alia, the structure was deficient at the time of pre-selection and selection to evaluation and exchange within the command structure about the performance of individual police officers; to the training of supervisory personnel to effectively and adequately evaluate performance of an officer; and to otherwise put the command structure on notice that an individual was at significant levels of risk to the public at large or to specific segments thereof. The net effect of this was to permit police officers of the Nassau County Police Department to function at levels of significant and substantial risk to the public.

446. As a result of the foregoing, conscious policies, practices, customs or usages, defendant, NASSAU, has permitted and allowed for the employment and retention of individuals whose individual circumstances place the public or segments thereof at substantial risk of being the victims of violent behavior. Such policies, practices, customs or usages are a direct and proximate cause of the conduct alleged herein and otherwise a direct and proximate cause of the injuries to plaintiff herein.

447. As a result of the foregoing, plaintiffs were caused to suffer personal injuries, violation of civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damage to their reputation and standing within their community.

448. As a result of the foregoing, plaintiffs demand judgment against defendants in a sum of money, which exceeds the jurisdictional limits of all the Courts of lesser jurisdiction.

## TWENTY-THIRD CAUSE OF ACTION
### (42 U.S.C. §1983 and Pendent Claim by Ralph Poux)

449. Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "448" above with the same force and effect as if fully set forth herein.

450. That plaintiff, RALPH POUX, was and is the lawful spouse of Camille Poux and as such was and is entitled to the comfort, enjoyment, society and service of his spouse.

451. That by reason of the foregoing conduct by defendants, plaintiff, RALPH POUX, was deprived of the comfort and enjoyment of the services and society of his spouse.

452. Defendants' conduct undermined plaintiff, RALPH POUX's liberty interest in preserving the integrity and stability of the marital relationship from intervention by the state without due process of law.

453. By reason of the foregoing, plaintiffs demand judgment against defendants in a sum of money which exceeds the jurisdictional limits of all the Courts of lesser jurisdiction.

## TWENTY-FOURTH CAUSE OF ACTION
### (42 U.S.C. §1988 – Attorneys' Fees from Suffolk County)

454. Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "453" above as if fully set forth herein.

455. The actions of defendants heretofore described resulting from the June 1, 2005 detention, imprisonment, assault and battery and malicious prosecution deprived plaintiff of rights, privileges and immunities as guaranteed under the United States Constitution,

67

Amendments Four and Fourteen, the New York State Constitution and the Civil Rights Acts, 42 U.S.C. §1983.

456. The complained of conduct was either the result of an official policy or unofficial custom, including, but not limited to, policies and customs concerning the hiring, training, supervision, retention and discipline of defendant, SUFFOLK's agents, servants and/or employees, and those involving the detention, unlawful imprisonment, assault and battery of individuals, including plaintiff.

457. That in the event that plaintiffs are successful in the prosecution of the aforesaid claim(s), plaintiffs shall be a prevailing party within the meaning of 42 U.S.C. §1988 and entitled to the recovery of attorneys' fees from the defendants.

458. By reason of the foregoing, the defendants became liable to the plaintiffs in a sum of money which exceeds the jurisdictional limits of all courts of lesser jurisdiction.

## TWENTY-FIFTH CAUSE OF ACTION
### (42 U.S.C. §1988 – Attorneys' Fees from Nassau County)

459. Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "458" above as if fully set forth herein.

460. The actions of defendants heretofore described resulting from the July 6, 2005 detention, imprisonment, assault and battery and malicious prosecution deprived plaintiff of rights, privileges and immunities as guaranteed under the United States Constitution, Amendments Four and Fourteen, the New York State Constitution and the Civil Rights Acts, 42 U.S.C. §1983.

461. The complained of conduct was either the result of an official policy or unofficial custom, including, but not limited to, policies and customs concerning the hiring, training,

68

supervision, retention and discipline of defendant, NASSAU's agents, servants and/or employees, and those involving the detention, unlawful imprisonment, assault and battery of individuals, including plaintiff.

462. That in the event that plaintiffs are successful in the prosecution of the aforesaid claim(s), plaintiffs shall be a prevailing party within the meaning of 42 U.S.C. §1988 and entitled to the recovery of attorneys' fees from the defendants.

463. By reason of the foregoing, the defendants became liable to the plaintiffs in a sum of money which exceeds the jurisdictional limits of all courts of lesser jurisdiction.

**WHEREFORE**, plaintiffs respectfully demand judgment for each of the aforesaid causes of action against defendants and request the following relief jointly and severally as against all of the defendants as follows: compensatory and punitive damages in a sum to be determined by the trier of fact; an award of reasonable attorney's fees, costs and disbursements of this action; and such other and further relief as this Court may deem just, fair, and proper under the circumstances.

Dated: New York, New York
      October 2, 2009

                            Yours, etc.

                            **RUBERT & GROSS, P.C.**
                            Attorneys for Plaintiffs
                            150 Broadway, Suite 1314
                            New York, New York 10038

                            BY: _____

                            I.D. #: _6 9 7 6_____

# UNITED STATES DISTRICT COURT
## for the

## EASTERN DISTRICT OF NEW YORK

CAMILLE POUX and RALPH POUX,

Plaintiffs,

v.

Civil Action No.

THE COUNTY OF SUFFOLK, DET. INV. JOHN WHITE, Shield
No. 265, THOMAS J. SPOTA, individually and as District Attorney
of the County of Suffolk, LINDA A. RUGGIERI, individually and as
Assistant District Attorneyof the County of Suffolk, MALLORY O.
SULLIVAN, individually and as Assistant District Attorney of the
County of Suffolk, GRAZIA DIVINCENZO, individually and as
Assistant District Attorney of the County of Suffolk, THE COUNTY OF
NASSAU, DET. RONALD SCHEPIS, Shield No. 883, KATHLEEN RICE,
individually and as District Attorney of the County of Nassau, MINDY
PLOTKIN, individually and as Assistant District Attorney of the County
of Nassau, MELISSA MORRONE, individually and as Assistant District
Attorney of the County of Nassau, CITIGROUP, INC., CITIBANK, N.A.,
CITIGROUP INVESTIGATIVE SERVICES and DARREN V. FINN,

Defendants.

## SUMMONS IN A CIVIL ACTION

TO:

A lawsuit has been filed against you.

Within twenty (20) days after service of this summons on you (not counting the day you received it) –
or 60 days if you are the United States or a United States agency, or an officer or employee of the United
States described in Fed. R. Civ. P. 12(a)(2) or (3) – you must serve on the plaintiff an answer to the attached
complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be
served on the plaintiff or plaintiff's attorney, whose name and address are:

> RUBERT & GROSS, P.C.
> 150 Broadway, Suite 1314
> New York, New York  10038

If you fail to respond, judgment by default will be entered against you for the relief demanded in the
complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: _____          _____

<em>Signature of Clerk or Deputy Clerk</em>